David Armando Martinez
2316 Gatewood St,
Los Angeles, CA 90031-1105
mrfivestar@outlook.com
Plaintiff as Pro Per



**FILED**
CLERK, U.S. DISTRICT COURT

**8/3/2022**

CENTRAL DISTRICT OF CALIFORNIA
BY: ___CB___ DEPUTY

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA – WESTERN DIVISION**

| | |
|---|---|
| David Armando Martinez et al, an Individual, | Case No. 2:22-cv-02651-AB-KS |
| Five Star & Socius Inc | |
| Plaintiff, | **FIRST AMENDED COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAW, FOR DAMAGES, FOR AN ACCOUNTING, FOR RESTITUITION, AND FOR OTHER RELIEF ARISING FROM:** |
| vs. | |
| Robinhood Crypto LLC et al, | **1. Negligence in the Securities** |
| Robinhood Securities LLC. | **2. Misrepresentation & Omissions** |
| Defendants. | **3. Breach of Fiduciary Duty** |
| | **4. Account Churning** |
| | **5. Unjust Enrichment** |
| | **6. Engaging in Self-Dealing Transactions** |

Courtroom: 7B
Judge: The Honorable Andre Birotte Jr

_____

Plaintiff David Armando Martinez, ("Martinez") files this first amended complaint and

further clarifies the dispute between the parties, his complaint and allegations as follows:

I. **JURISDICTION AND VENUE**

1. This court has jurisdiction over this action pursuant to 28 U.S.C § 1331 Amount in

Controversy exceeds $75,000, Sections 20(b), 20(a) of the securities acts of 1934. ("Securities Act")

- 1 -
First Amended Complaint for Violations, For Damages, For an Accounting, For Restitution, & ETC.

1. (Wolf vs Superior Court (2003) 107 Cal.App.4th 25, 29)
2. *(Janus Capital Group, Inc V First Derivative Traders, 564 U.S. 135 (2011)https:////supreme.justia.com/cases/federal/us/564/135/*
3. *FDIC RULES & REGULATIONS (12 C.F.R 330.5; 12 C.F.R 330.7)*

Plaintiff demand is set on a few sets of facts from his account reconciliation when it was drafted and then presented to defense totaling $82,695.25. (This is a preliminary loss & the basis to his claim)

2. Pursuant to 28 U.S.C. § 1391, 17 CFR § 240.10b-5 (a)(b)(c) Rule 10b-3, Rule 10b-21 of the Securities & Exchange Act of 1934 ("Exchange Act"), this Court has personal jurisdiction over Robinhood because it is headquartered in and authorized to do business and does conduct business in California, and because it has sufficient minimum contacts with this state and/or sufficiently avails itself of the markets of this state through its business within this state to render the exercise of jurisdiction by this Court permissible.

3. Furthermore, pursuant to 29 U.S. Code § 1109 – Liability for Breach of Fiduciary Duty, Robinhood assumed a duty to ensure that its systems were sufficiently equipped to reliably deliver such services under reasonably foreseeable customer demands and market conditions, such as those at issue in this case. Robinhood acted negligently by failing to adequately or properly equip itself technologically and systemically to maintain plaintiff access to trading services.

4. Venue is appropriate in this district pursuant to 28 USC § 1391(b)(2), because Robinhood is headquartered in Menlo Park and a substantial part of the acts and omissions that gave rise to this Complaint occurred or emanated from the County of Los Angeles.

5. Finally, venue is also proper in this district pursuant to Section 22(a) of the Securities Act, 15 U.S.C. 5 77v(a), 15 U.S.C. § 78aa, and Section 27 of the ("Exchange Act"), because certain of the transactions, acts, practices, and courses of conduct constituting violations of the federal securities laws occurred within this district.

- 2 -

First Amended Complaint for Violations, For Damages, For an Accounting, For Restitution, & ETC.

1. (Wolf vs Superior Court (2003) 107 Cal.App.4[th] 25, 29)
2. *(Janus Capital Group, Inc V First Derivative Traders, 564 U.S. 135 (2011)* https:////supreme.justia.com/cases/federal/us/564/135/
3. *FDIC RULES & REGULATIONS* (12 C.F.R 330.5; 12 C.F.R 330.7)

## II. PARTIES

6. Plaintiff David A Martinez is a Citizen & Dual-Resident of California & Nevada and is over the age of 18.

7. Defendant Robinhood Crypto is a Delaware corporation with its principal place of business at 85 Willow Road, Menlo Park, California 94025. It is a wholly owned subsidiary of Robinhood Markets.

8. Defendant Robinhood Securities is a Delaware corporation with its principal place of business at 500 Colonial Center Parkway, Suite 100, Lake Mary, Florida 32746. It is a wholly owned subsidiary of Robinhood Markets its parent corporation. Robinhood Securities is registered as a broker-dealer with the U.S. Securities & Exchange Commission ("SEC").

## III. SUMMARY

9. Robinhood is a Brokerage firm that facilitates commission-free trades of stock, exchange trade funds and cryptocurrencies by use of their platform or app, who in some way committed some or all the tortious actions (and constitutional violations) complained of in this action, and/or otherwise is responsible for and liable to plaintiffs for the acts complained in this action.

10. Beginning in 2020 and continuing through December 2021, Robinhood Crypto LLC & Robinhood Securities LLC subsidiaries of Robinhood Markets Inc & combined as ("ROBINHOOD") violated federal securities law by means of misrepresentation, omissions, & false information with their "Ultimate Authority" over the statements content & formulation through the means of another person. In this case over Plaintiff David A Martinez that did not consent to certain acts and practices.

- 3 -

First Amended Complaint for Violations, For Damages, For an Accounting, For Restitution, & ETC.

1. (Wolf vs Superior Court (2003) 107 Cal.App.4th 25, 29)
2. *(Janus Capital Group, Inc V First Derivative Traders, 564 U.S. 135 (2011)https:////supreme.justia.com/cases/federal/us/564/135/*
3. *FDIC RULES & REGULATIONS* (12 C.F.R 330.5; 12 C.F.R 330.7)

11. As said in the main securities anti-fraud provisions of Section 20(b) Robinhood was the maker of produced monthly statements, its content and formulation, as well as the power to issue the statement.

## IV. **THE DEFENDENTS' VIOLATIVE CONDUCT**

12. As a provider of financial services and a registered securities investment broker-dealer, always relevant herein Robinhood was a fiduciary to Plaintiff and owed him the highest good faith and integrity in performing its financial services and acting as a securities broker-dealer on their behalf. As a broker-dealer, Robinhood provides securities trading services by taking, entering, and executing orders, provides information and advice to customers on investments and investment strategies (although it disclaims doing so), and even executes transactions within accounts when not specifically requested by plaintiff.

13. Robinhood also had the authority & may "in its sole discretion" buy or sell securities and liquidate accounts in any circumstance, whatsoever, "including, but not limited to" certain enumerated events such as having insufficient funds. Accordingly, Robinhood expressly assumes all the fiduciary responsibilities associated with its retention of discretion to exercise trades and other transactions with or without customer direction.

14. Therefore, in said conspiracy Defendant's / agreements / understanding / plan / scheme / joint action / was all approximate causes of violations to deprive plaintiff to those right under constitution as indicated above & for furthermore complained herein.

- 4 -

First Amended Complaint for Violations, For Damages, For an Accounting, For Restitution, & ETC.

1. (Wolf vs Superior Court (2003) 107 Cal.App.4th 25, 29)
2. *(Janus Capital Group, Inc V First Derivative Traders, 564 U.S. 135 (2011)https:////supreme.justia.com/cases/federal/us/564/135/*
3. *FDIC RULES & REGULATIONS (*12 C.F.R 330.5; 12 C.F.R 330.7)

1

2
## V. **PLAINTIFF CLAIMS & BACKGROUND**

3
15. Between years 2020 – 2021, Plaintiff David A Martinez utilized robin hood trading

4
platform to invest personal & business capital proceeds as an individual and as a managing partner

5

6
totaling that totaled an average amount of $53,000.

7
16.  During this trading time frame David A Martinez quickly gained momentum & had

8
instant GAINS on securities purchased and on trades purchased using defendant robin hoods platform

9
& by appointment as agent that can be seen & reconciled on financial statements provided by robin

10
hood.

11
17. Upon continued use robin hood quickly demonstrated their schemes by not complying

12

13
with Section 17A of the Securities Exchange Act of 1934, March T-2 Settlement Mandate, & thus

14
holding trades made by David A Martinez for 3 to 5 days which exceeded the 2-day timeframe.

15
**Misrepresentation & Omissions**

16
18. As a result, due to their exceeded confirmations of purchase Robinhood further

17
misrepresented these transactions by favoring cryptocurrency transactions for which were

18

19
unauthorized. These transactions are misled and appear in account activity as First In as

20
compared to the "Pending Settlements Transactions" that are Second on robin hoods reported

21
monthly statements. As stated in (Wolf vs Superior Court (2003) 107 Cal.App.4th 25, 29)

22
robin hood had the responsibility &

23
"A fiduciary relationship is ''''any relation existing between parties to a

24

25
transaction wherein one of the parties is in duty bound to act with the utmost

26

27
1. (Wolf vs Superior Court (2003) 107 Cal.App.4th 25, 29)

28
2. *(Janus Capital Group, Inc V First Derivative Traders, 564 U.S. 135*
*(2011)*https:////supreme.justia.com/cases/federal/us/564/135/
3. *FDIC RULES & REGULATIONS* (12 C.F.R 330.5; 12 C.F.R 330.7)

*good faith for the benefit of the other party. Such a relation ordinarily arises*

*where a confidence is reposed by one person in the integrity of another, and in*

*such a relation the party in whom the confidence is reposed, if he voluntarily*

*accepts or assumes to accept the confidence, can take no advantage from his acts*

*relating to the interest of the other party without the latter's knowledge or*

*consent.*"

duty to the account and its accuracy. Yet they failed and plaintiff disagrees with the defendants

handling and reporting and concurs breach of fiduciary duty.

19. This scheme is further attributable in connections with Deposits made by plaintiff and

then misrepresented as FDIC Swept transactions that withing days of availability where either

misrepresented as Crypto Money Movement and later matched or reported as FDIC Swept defendants

also failed to indicate on several occasions in their monthly statements who the program bank

provider was or the institution that swept those funds from availability. It is further proven by

reviewing debit and credit month totals that do not balance. **Based on Statement from FDIC:**

*"If robin hood is depositing US Dollars on behalf of Clients into an FDIC-Insured Bank, those funds*

*would be subject to FDIC insurance coverage, but ONLY if the recordkeeping and disclosure rules*

*for fiduciary accounts are met and the funds are deposited into and remain on deposit an FDIC*

*insured financial institution."*

**Those rules require that:**

*a. The Fiduciary nature of the account be disclosed in the account records, usually in the*

*account title, and*

First Amended Complaint for Violations, For Damages, For an Accounting, For Restitution, & ETC.

1. (Wolf vs Superior Court (2003) 107 Cal.App.4th 25, 29)
2. *(Janus Capital Group, Inc V First Derivative Traders, 564 U.S. 135
(2011)https:////supreme.justia.com/cases/federal/us/564/135/*
3. *FDIC RULES & REGULATIONS (*12 C.F.R 330.5; 12 C.F.R 330.7)

*b. The identities and interests of the client must be ascertainable either from records of the institution or, more usually, from the records of the agent/fiduciary, maintained in good faith and in the ordinary course of action. (FDIC RULES & REGULATIONS - 12 C.F.R 330.5; 12 C.F.R 330.7)*

20. These schemes and insider trading without David's consent further proves & demonstrate caused losses to capital contributed and as innocent. *(Janus Capital Group, Inc V First Derivative Traders, 564 U.S. 135 (2011)*

21. Defendants is a provider of financial services and registered securities investment broker dealer, Robinhood had a duty to exercise reasonable care, skill, and ability in conducting-facilitating financial services and transactions for its customers. unlawfully breached its duties by, among other things, failing to maintain a reliably functioning electronic trading platform with sufficient operating capability and adequate infrastructure to process customer transactions, including during volatile and high-volume trading sessions; by failing to adequately design, test, and monitor its infrastructure necessary to timely process customers' transactions; by failing to provide timely access to trading services during the Outages; by failing to timely process securities trades, including taking orders, entering orders, and executing orders; by failing to keep records of trades (including attempted trades); by failing to provide timely access to 'plaintiffs account, securities and funds .

22. This further was unconstitutional when plaintiffs' deposits were stolen and further unavailable for his use. Referencing the $5,000 inquiry made by David to robin hood in March 2021 & occasions where favor benefited plaintiff for which robin hood prevented David to trade & forced margin calls based on their set thresholds that caused securities to be sold for less than the initial cost when obtained.

- 7 -

First Amended Complaint for Violations, For Damages, For an Accounting, For Restitution, & ETC.

1. (Wolf vs Superior Court (2003) 107 Cal.App.4th 25, 29)
2. *(Janus Capital Group, Inc V First Derivative Traders, 564 U.S. 135 (2011)*https:////supreme.justia.com/cases/federal/us/564/135/
3. *FDIC RULES & REGULATIONS (*12 C.F.R 330.5; 12 C.F.R 330.7)

23. David A Martinez then came to reconcile the 24 months that he utilized robin hood and further discovered discrepancies in Robin hoods Year End Financial statements both in monthly reporting's and with tax documents. Due to robin hoods failed duty is reasons why plaintiff furthered reconciled and incurred Forensic Accounting costs. *(See Attached Exhibits & Lodged Documents)*

## VI.  **UNFAIR ENRICHMENT**

24. By its wrongful conduct described herein, Robinhood has obtained a benefit from Plaintiff that includes, but is not limited to, commissions & fees for maintaining their accounts, & for administrating his personal data, &/or receiving payments for order flow, in maintaining deposited funds, charging and/or receiving interest up to 1% on an annual basis, on accounts and margin balances, charging and/or receiving fees, commissions and Gold Membership fees.  Since Robinhood's profits, benefits, and other compensation were obtained by improper means, Robinhood was unjustly enriched at the expense of the Plaintiff and is not legally or equitably entitled to retain any of the benefits, compensation or profits it realized this constitutes Account Churning.

## VII. **RESTITUITION**

25. In disagreement & David been powerless - defendant made it impossible to be contacted & even harder to discuss issues by email, since there was no active phone number. After multiple inquiries Plaintiff finally came to request robin hood to return deposits & restore monies owed from claims submitted & still unaccountable till this day. Robin hood via email quickly denied responsibility and any & all relief requested.

- 8 -

First Amended Complaint for Violations, For Damages, For an Accounting, For Restitution, & ETC.

1. (Wolf vs Superior Court (2003) 107 Cal.App.4th 25, 29)
2. *(Janus Capital Group, Inc V First Derivative Traders, 564 U.S. 135 (2011)https:////supreme.justia.com/cases/federal/us/564/135/*
3. *FDIC RULES & REGULATIONS* (12 C.F.R 330.5; 12 C.F.R 330.7)

26. All these acts, misrepresentations, omissions, false statements, delayed trades & internal trades without consent proves defendant's failed promise to its consumers and demonstrates their product been liable to the harm that was done to David A Martinez causing him and his interested parties damages including pain & suffering, emotional distress, and stated financial losses. As a result, Plaintiff seeks an order of this Court requiring Robinhood to refund, disgorge, and pay as restitution any profits, benefits, and other compensation obtained by Robinhood from its wrongful conduct and/or the establishment of a constructive trust from which may seek restitution.

## VIII. **PRAYER**

**WHEREFORE** Plaintiff prays that this court award damages and provide relief as follows:

1. **For Actual, Incidental and Consequential damages and whereas restitution may be deemed necessary,**

2. **For Punitive Damages,**

3. **For Pre-Judgement Interest,**

4. **For Forensic Accounting Costs, Service of Process, Any Court Costs (Ex. Pacer),**

5. **For any other relief the court deems just and proper**

First Amended Complaint for Violations, For Damages, For an Accounting, For Restitution, & ETC.

1. (Wolf vs Superior Court (2003) 107 Cal.App.4th 25, 29)
2. *(Janus Capital Group, Inc V First Derivative Traders, 564 U.S. 135 (2011)*https:////supreme.justia.com/cases/federal/us/564/135/
3. *FDIC RULES & REGULATIONS* (12 C.F.R 330.5; 12 C.F.R 330.7)

THIS FIRST AMENDED COMPLAINT IS DEEMED VERIFIED UNDER THE

PROVISIONS OF CODE OF CIVIL PROCEDURE SECTION 446.

Respectfully Submitted,

Dated: August 3, 2022.                    David Armando Martinez

Plaintiff as Pro Per.

First Amended Complaint for Violations, For Damages, For an Accounting, For Restitution, & ETC.

1. (Wolf vs Superior Court (2003) 107 Cal.App.4th 25, 29)
2. *(Janus Capital Group, Inc V First Derivative Traders, 564 U.S. 135 (2011)*https:////supreme.justia.com/cases/federal/us/564/135/
3. *FDIC RULES & REGULATIONS* (12 C.F.R 330.5; 12 C.F.R 330.7)

**2020**   *1st Draft (using only robinhood's Statements)*

| # | ACH DEPOSIT | Date | Crypto Money Movement Debit | Credit | Date | FDIC SWEEP Debit | Credit | Date |
|---|---|---|---|---|---|---|---|---|
| 1 | $ 47.89 | 4-Mar | $ 47.46 | $ - | 26-Mar | | 0 | 0 |
| 2 | $ 20.00 | 4-Mar | $ 499.53 | $ - | 26-Mar | | | |
| 3 | $ 10.32 | 4-Mar | $ 0.30 | $ - | 31-Mar | MARCH NO FDIC SWEEP | 2020 | |
| 4 | $ 12.32 | 4-Mar | $ 0.45 | $ - | 31-Mar | | | |
| 5 | $ 69.71 | 11-Mar | $ 50.01 | $ - | 31-Mar | **TRADE CONFIRMATIONS** | | |
| 6 | $ 31.10 | 11-Mar | $ 101.02 | $ - | 31-Mar | *Total Purchased* | *Total Sold* | |
| 7 | $ 459.75 | 12-Mar | $ 10.00 | $ - | 31-Mar | $ 94.26 | $ 80.70 | 6-Mar |
| 8 | $ 55.60 | 17-Mar | $ 0.11 | $ - | 31-Mar | $ 65.86 | $ - | 10-Mar |
| 9 | $ 16.74 | 17-Mar | $ 0.89 | $ - | 31-Mar | $ 216.03 | $ 113.14 | 11-Mar |
| 10 | $ 44.87 | 17-Mar | $ 40.00 | $ - | 31-Mar | $ 263.55 | $ 52.91 | 17-Mar |
| 11 | $ 49.22 | 17-Mar | $ 48.50 | $ - | 31-Mar | $ 773.79 | $ - | 18-Mar |
| 12 | $ 44.26 | 17-Mar | $ 50.00 | $ - | 31-Mar | $ 13.58 | $ - | 19-Mar |
| 13 | $ 81.74 | 18-Mar | $ 50.00 | $ - | 31-Mar | $ 2,378.84 | $ 610.66 | 23-Mar |
| 14 | $ 129.00 | 18-Mar | $ 13.00 | $ - | 31-Mar | $ 7,419.58 | $ 3,517.87 | 24-Mar |
| 15 | $ 31.44 | 18-Mar | $ 89.99 | $ - | 31-Mar | $ 1,537.44 | $ - | 25-Mar |
| 16 | $ 479.10 | 18-Mar | $ 129.22 | $ - | 31-Mar | $ 1,673.10 | $ 1,560.18 | 26-Mar |
| 17 | $ 52.40 | 18-Mar | $ 38.00 | $ - | 31-Mar | $ 2,068.98 | $ - | 27-Mar |
| 18 | $ 14.93 | 19-Mar | $ 20.93 | $ - | 31-Mar | $ 215.50 | $ 1,448.84 | 30-Mar |
| 19 | $ 82.10 | 19-Mar | $ 41.01 | $ - | 31-Mar | $ 7,869.32 | $ 2,002.90 | 31-Mar |
| 20 | $ 253.04 | 23-Mar | $ - | $ 662.94 | 31-Mar | **$ 24,589.83** | **$ 9,387.20** | |
| 21 | $ 349.88 | 23-Mar | $ 58.96 | $ - | 31-Mar | CONFIRMED | $ 15,202.63 | **March Total** |
| 22 | $ 445.72 | 23-Mar | $ 374.82 | $ - | 31-Mar | | | |
| 23 | $ 718.94 | 23-Mar | $ 0.66 | $ - | 31-Mar | Recon & Theory : | Robinhood | |
| 24 | $ 421.05 | 24-Mar | $ 46.50 | $ - | 31-Mar | March Total Securities | $ 11,273.26 | Statement |
| | | | | | | Brokerage Cash Balance | | |
| 25 | $ 815.71 | 25-Mar | $ - | $ 129.89 | 31-Mar | (Reversed) | $ 2,878.23 | Statement |

| # | Amount | Date | Debit | Credit | Date | Description | Value | Date |
|---|---|---|---|---|---|---|---|---|
| 26 | $ 354.93 | 25-Mar | $ - | $ 128.66 | 31-Mar | | | |
| 27 | $ 230.01 | 26-Mar | $ 4.59 | $ - | 31-Mar | | | |
| 28 | $ 269.21 | 27-Mar | $ 125.05 | $ - | 31-Mar | | | |
| 29 | $ 65.25 | 27-Mar | $ 51.06 | $ - | 31-Mar | | | |
| 30 | $ 131.91 | 27-Mar | $ 107.97 | $ - | 31-Mar | | | |
| 31 | $ 802.09 | 27-Mar | $ - | $ 869.81 | 31-Mar | Robinhood Gold | $ 5.00 | |
| 32 | $ 299.99 | 31-Mar | $ 19.13 | $ - | 31-Mar | Robinhood Fees | | |
| 33 | $ 1,000.00 | 31-Mar | $ 883.52 | $ - | 31-Mar | ACH Reversal | $ 53.85 | 23-Mar |
| 34 | $ 350.00 | 31-Mar | $ 0.90 | $ - | 31-Mar | ACH Reversal | $ 9.00 | 23-Mar |
| | $ 8,240.22 | March Total | $ 129.85 | $ - | 31-Mar | Total | $ 49.85 | |
| | | | $ - | $ 1.15 | 31-Mar | | | |
| | | | $ 129.08 | $ - | 31-Mar | | | |
| | | | $ - | $ 999.98 | 31-Mar | | | |
| | | | $ 700.16 | $ - | 31-Mar | | | |
| | | | $ 0.50 | $ - | 31-Mar | | | |
| | | | $ 220.23 | $ - | 31-Mar | | | |
| | | | $ 45.01 | $ - | 31-Mar | | | |
| | | | $ 0.28 | $ - | 31-Mar | | | |
| | | | $ 150.00 | $ - | 31-Mar | | | |
| | | | $ - | $ 3.99 | 31-Mar | | | |
| | | | $ 0.40 | $ - | 31-Mar | | | |

Boxed summary:

| | | |
|---|---|---|
| Crypto Money Movement Net Difference (Reversed) | $ 1,002.99 | Discovery / Theory Only Entered |
| Robinhood Fees (ACH Reversal) | $ 49.85 | 1st Fee |
| Total Theory - Confirmed Securities Total : | $ 15,204.33 | Possible? |
| | $ 15,202.63 | Possible? |
| Grand Total = | $ 1.70 | Suspense / Almost Perfect & true |

| | | | | |
|---|---|---|---|---|
| $ | - | $ 162.99 | 31-Mar | |
| $ | - | $ 14.99 | 31-Mar | |
| $ | - | $ 349.43 | 31-Mar | |
| $ | 4.99 | $ - | 31-Mar | |
| $ | 41.01 | 0 | 31-Mar | |
| **$ 4,325.09** | | $ 3,323.83 | March Total | |
| | 4326.82 | $(1,001.26) | Net Suspense | |
| $ | 1.73 | $ (1,002.99) | Matches BTC Sale Not Deposited & Not On Statements | |

SEE BELOW

**Robinhood App - Displayed Crypto Transactions**
**2020**

| # | Date | Type | Bought | Sold |
|---|------|------|--------|------|
| | January | NO Crypto | | |
| | February | NO Crypto | | |
| 1 | 3/25/2020 | BTC | $ 499.53 | $ - |
| 2 | 3/25/2020 | BTC | $ 47.46 | $ - |
| 3 | 3/25/2020 | BTC | $ 700.16 | $ - |
| 4 | 3/25/2020 | BTC | $ 4.59 | $ - |
| 5 | 3/25/2020 | BTC | $ 0.50 | $ - |
| 6 | 3/25/2020 | BTC | $ 0.40 | $ - |
| 7 | 3/25/2020 | BTC | $ 19.13 | $ - |
| 8 | 3/25/2020 | BTC | $ 0.28 | $ - |
| 9 | 3/25/2020 | BTC | $ 349.31 | $ - |
| 10 | 3/25/2020 | BTC | $ 0.66 | $ - |
| 11 | 3/25/2020 | BTC | $ 41.01 | $ - |
| 12 | 3/25/2020 | BTC | $ 0.90 | $ - |
| 13 | 3/25/2020 | BTC | $ - | $ 998.47 |
| 14 | 3/25/2020 | BTC | $ - | $ 162.99 |
| 15 | 3/25/2020 | BTC | $ - | $ 479.32 |
| 16 | 3/25/2020 | BTC | $ - | $ 14.99 |
| 17 | 3/25/2020 | BTC | $ - | $ 3.99 |
| 18 | 3/25/2020 | BTC | $ - | $ 1.15 |
| 19 | 25-Mar | BTC | $ 1,013.37 | $ - |

| 20 | 31-Mar BTC | $ | 46.50 | $ | - | | |
| 21 | 31-Mar BTC | $ | 51.06 | $ | - | | |
| 22 | 31-Mar BTC | $ | 150.00 | $ | - | | |
| 23 | 31-Mar BTC | $ | 45.01 | $ | - | | |
| 24 | 31-Mar BTC | $ | 4.99 | $ | - | | |
| 25 | 31-Mar BTC | $ | - | $ | 999.98 | | |
| 26 | 31-Mar BTC | $ | 499.87 | $ | - | | |
| 27 | 31-Mar BTC | $ | 150.15 | $ | - | | |
| 28 | 31-Mar BTC | $ | 41.01 | $ | - | | |
| 29 | 31-Mar BTC | $ | 58.96 | $ | - | | |
| 30 | 31-Mar BTC | $ | 51.00 | $ | - | | |
| 31 | 31-Mar BTC | $ | 40.00 | $ | - | | |
| 32 | 31-Mar BTC | $ | 107.97 | $ | - | | |
| 33 | 31-Mar BTC | $ | 101.02 | $ | - | | |
| 34 | 31-Mar BTC | $ | 50.00 | $ | - | | |
| 35 | 31-Mar BTC | $ | 50.01 | $ | - | | |
| 36 | 31-Mar BTC | $ | 10.00 | $ | - | | |
| 37 | 31-Mar BTC | $ | 89.99 | $ | - | | |
| 38 | 31-Mar BTC | $ | 50.00 | $ | - | | |
| 39 | 31-Mar BTC | $ | 0.89 | $ | - | | |
| 40 | 31-Mar BTC | $ | 0.11 | $ | - | | |
| 41 | 31-Mar BTC | $ | 48.50 | $ | - | | |
| 42 | 31-Mar BTC | $ | 0.45 | $ | - | | |
| 43 | 31-Mar BTC | $ | - | $ | 662.94 | | |
| 44 | 31-Mar BTC | $ | - | $ | 1,002.99 | SUSPENSE | Missing on Statements |
| 45 | 31-Mar BTC | $ | 0.30 | $ | - | | Matches Suspense |
| 46 | 31-Mar BTC | $ | 3.80 | $ | - | | |
| 47 | 31-Mar BTC | $ | 290.33 | $ | - | | |
| 48 | 31-Mar BTC | $ | 9.50 | Note to Self : 49 Transtions for BTC on 03/31/2020 (Single Day ) | | | |
| 49 | 3/31/2020 BTC | $ | 0.15 | $ | - | | |
| | Mar-20 | $ 4,628.87 | | $ 4,326.82 | $ | (302.05) Net Loss | |

ROBINHOOD GOLD - MARGIN & INTEREST

| Date of Payment | Average Margin used | Yearly Interest Rate | Total Interest Paid | Biling Cycle |
|---|---|---|---|---|
| 4/20/2020 | $ 4,860.45 | 5.00% | $ 20.25 | 03/22-04/21 |
| 5/20/2020 | $ 12,497.11 | 5.00% | $ 52.07 | 04/21-05/21 |
| 6/5/2020 | $ 6,114.19 | 5.00% | $ 25.48 | 05/21-06/20 |
| 7/7/2020 | $ 5,552.20 | 5.00% | $ 23.13 | 06/08/07/08 |
| 8/6/2020 | $ 1,192.96 | 5.00% | $ 4.97 | 07/08-08/07 |

**FDIC Deposit Insurance Coverage Response to Case No. 01425829**

FDIC NoReply <shr_fdicsfnoreply@fdic.gov>

Mon 8/1/2022 11:29 AM

To: mrfivestar@outlook.com <mrfivestar@outlook.com>



August 1, 2022
Case No. 01425829

Dear Mr. Martinez:

Thank you for contacting the Federal Deposit Insurance Corporation (FDIC). Your recent inquiry asked the following question:

"I understand Stocks & Investments are not FDIC Insured. So my question is on verification for Robinhood security plc & Robin Hood crypto llc are institutions covered by FDIC? In my brokerage statements Robin Hood reports funds been swept by FDIC and there program bank or provider is Goldman . sacs. I however do not bank with Goldman Sachs & at times amounts are swept and no bank is recorded? As a result can you address this legality by helping me understand if this is legal & binding to coverage? Is Robinhood FDIC insured & can they sweep funds from your brokerage account?"

Robinhood Securities, LLC and Robinhood Crypto, LLC are not FDIC-insured organizations. If Robinhood is depositing US Dollars on behalf of clients into an FDIC-insured bank, those funds would be subject to FDIC insurance coverage, but ONLY if the recordkeeping and disclosure rules for fiduciary accounts are met and the funds are deposited into and remain on deposit at an FDIC insured financial institution.

Those rules require that:

1) The fiduciary nature of the account be disclosed in the account records, usually in the account title, and

2) The identities and interests of the client must be ascertainable either from the records of the institution or, more usually, from the records of the agent/fiduciary, maintained in good faith and in the ordinary course of business.

The FDIC only insures deposits of banks and savings associations. Because Robinhood Securities, LLC and Robinhood Crypto, LLC are not FDIC-insured institutions, any transaction, performance, or other issues with Robinhood Securities, LLC and Robinhood Crypto, LLC are not subject to FDIC jurisdiction. FDIC insurance protects your deposits ONLY in the unlikely event an insured bank fails. Deposit insurance does not protect against the failure of a non-bank company that may be placing funds at one or more FDIC-insured banks.

If you wish to learn more about FDIC deposit insurance coverage, please visit the Deposit Insurance page on our website where you will find our brochure, "Your Insured Deposits" which explains in detail all of the deposit insurance ownership categories.

You can also visit EDIE, our electronic estimator, where you can calculate the insurance coverage of your accounts. These and other deposit insurance resources can be accessed directly by clicking the following link:  http://www.fdic.gov/deposit.

I hope this information is helpful. If you have further questions, please contact us at 1-877-275-3342 or visit the FDIC's Information and Support Center located at https://ask.fdic.gov/fdicinformationandsupportcenter/s/.

Sincerely,

Deposit Insurance Unit

National Center for Consumer and Depositor Assistance
Federal Deposit Insurance Corporation
Telephone: 877-ASK-FDIC (877-275-3342)

**Please note that our response to your deposit insurance coverage inquiry is based strictly on the information provided, and any change or omission in the facts or failure to comply with FDIC's deposit insurance requirements could change the deposit insurance coverage discussed in this response.**

**2021**

| # | ACH Deposit | Dates | Crypto Money Movement | | Date | | FDIC SWEEP | | Date | |
|---|---|---|---|---|---|---|---|---|---|---|
| | | | Debit | Credit | | | | Credit | | BALANCE |
| 0 | $ 2,058.09 | 12-Mar | | | | | | | | 1-Mar |
| 1 | $ 1,500.00 | 1-Mar | 50.20 | - | 3-Mar | $ | 5.00 | $ | 5,000.41 | 3-Mar |
| 2 | $ 1,200.16 | 1-Mar | 41.73 | - | 3-Mar | $ | 19.71 | $ | - | 3-Mar |
| 3 | $ 3,000.00 | 22-Mar | 100.21 | - | 3-Mar | $ | 75.20 | $ | - | 3-Mar |
| 5 | $ 1,000.00 | 22-Mar | 49.97 | - | 3-Mar | $ | 50.20 | $ | - | 3-Mar |
| 6 | $ 532.00 | 1-Mar | 17.21 | - | 3-Mar | $ | 50.52 | $ | - | 3-Mar |
| 6 | $ 450.00 | 22-Mar | 100.21 | - | 3-Mar | $ | 49.97 | $ | - | 5-Mar |
| 7 | $ 541.06 | 22-Mar | 100.20 | - | 3-Mar | $ | 50.00 | $ | - | 5-Mar |
| | $ 10,382.21 | March Total | 31.21 | - | 3-Mar | $ | 500.13 | $ | - | 5-Mar |
| | $ 9,741.15 | | 200.20 | - | 22-Mar | $ | - | $ | - | 5-Mar |
| | | | 84.71 | - | 22-Mar | $ | 66.43 | $ | - | 5-Mar |
| | | | 100.20 | - | 22-Mar | $ | - | $ | 4,003.61 | 5-Mar |
| | | | 100.21 | - | 22-Mar | $ | - | $ | 69.53 | 5-Mar |
| | | | 49.08 | - | 22-Mar | $ | 33.01 | $ | - | 5-Mar |
| | | | 100.20 | - | 22-Mar | $ | - | $ | 198.11 | 5-Mar |
| | | | 45.42 | - | 22-Mar | $ | 15.00 | $ | - | 4-Mar |
| | | | 66.45 | - | 22-Mar | $ | - | $ | 33.00 | 5-Mar |
| | | | 500.13 | - | 22-Mar | $ | - | $ | 189.00 | 5-Mar |
| | | | 50.20 | - | 22-Mar | $ | 50.20 | $ | - | 5-Mar |
| | | | 49.97 | - | 22-Mar | $ | 4.51 | $ | - | 5-Mar |
| | | | 180.00 | - | 22-Mar | $ | - | $ | 10.00 | 5-Mar |
| | | | 75.22 | - | 22-Mar | $ | 25.00 | $ | - | 5-Mar |
| | | | | $ | 100.43 | 5-Mar | $ | - | $ | 127.30 | 5-Mar |
| | | | | $ | 76.00 | 5-Mar | $ | - | $ | 29.99 | 5-Mar |
| | | | | | | | | | | |
| | | | | $ | 1.53 | 5-Mar | $ | - | $ | 59.99 | 5-Mar |
| | | | | | | | | | | |
| | | | | $ | 1.27 | 5-Mar | $ | - | $ | 20.00 | 5-Mar |
| | | | | | | | | | | |
| | | | 25.00 | - | 5-Mar | $ | - | $ | 15.00 | 5-Mar |
| | | | | $ | 1.73 | 5-Mar | $ | - | $ | 48.23 | 5-Mar |
| | | | | | | | | | | |
| | | | | $ | 0.54 | 5-Mar | $ | - | $ | 50.00 | 5-Mar |
| | | | | | | | | | | |
| | | | | $ | 0.54 | 5-Mar | $ | - | $ | 26.00 | 5-Mar |
| | | | | | | | | | | |
| | | | | $ | 1.20 | 5-Mar | $ | - | $ | 5.00 | 5-Mar |
| | | | | $ | 18.00 | 5-Mar | $ | - | $ | 49.97 | 5-Mar |
| | | | | $ | 1.23 | 5-Mar | $ | - | $ | 25.00 | 5-Mar |
| | | | | $ | 0.24 | 5-Mar | $ | - | $ | 4.34 | 5-Mar |
| | | | | $ | 24.99 | 5-Mar | $ | - | $ | 5.00 | 5-Mar |
| | | | | $ | 5.00 | 5-Mar | $ | - | $ | 264.89 | 9-Mar |
| | | | | $ | 4.99 | 5-Mar | $ | 1,078.63 | | 9-Mar |
| | | | | $ | 5.00 | 5-Mar | $ | 2,107.99 | | 22-Mar |
| | | | | $ | 2.00 | 5-Mar | $ | 2,161.53 | | 22-Mar |
| | | | | $ | 4.34 | 5-Mar | $ | 870.38 | | 22-Mar |
| | | | | $ | 25.00 | 5-Mar | $ | 538.00 | $ | 541.06 | 22-Mar | Matches Deposit |
| | | | | $ | 49.97 | 5-Mar | $ | - | $ | - | 22-Mar |
| | | | | $ | 5.00 | 5-Mar | 2,631.81 | | | 24-Mar |
| | | | | $ | 2.00 | 5-Mar | 295.38 | | | 25-Mar |
| | | | | $ | 48.23 | 5-Mar | $ | - | $ | 1.80 | 29-Mar |
| | | | | $ | 15.00 | 5-Mar | 477.21 | | | 31-Mar INTEREST PAYMENT |
| | | | | $ | 20.00 | 5-Mar | $ | 11,044.94 | $ | 6,044.76 | |
| | | | | $ | 0.08 | 5-Mar | | | $ | 5,000.41 | Balance | 31-Mar |
| | | | | $ | 29.99 | 5-Mar | | | 0 | | |
| | | | | $ | 127.30 | 5-Mar | | | 0 | | |
| | | | 20.20 | $ | - | 5-Mar | | | 0 | | |
| | | | 20.00 | $ | - | 5-Mar | | | 0 | | |
| | | | 4.51 | $ | 10.00 | 5-Mar | | | 0 | | |
| | | | 50.00 | $ | - | 5-Mar | | | 0 | | |
| | | | | $ | 189.00 | 5-Mar | | | 0 | | |
| | | | 33.00 | $ | - | 5-Mar | | | 0 | | |
| | | | 19.00 | $ | - | 5-Mar | | | 69.53 | | |
| | | | 33.01 | $ | 198.11 | 5-Mar | | | 0 | | |
| | | | | $ | 100.24 | 5-Mar | | | 198.11 | | |

**2021 - March - Account Statement**

**Crypto Money Movement** / **EQUALS** / **FDIC SWEEP**

| Debit | Credit | Date | Type | | Debit | Credit | Date | Type |
|---|---|---|---|---|---|---|---|---|
| $ | 50.20 | $ | 2-Mar | Crypto Movement | $ | - | $ | 50.20 | 3-Mar | FDIC SWEEP |
| $ | 500.13 | $ | 2-Mar | Crypto Movement | $ | - | $ | 500.13 | 3-Mar | FDIC SWEEP |
| $ | 50.00 | $ | 2-Mar | Crypto Movement | $ | - | $ | 50.00 | 3-Mar | FDIC SWEEP |
| $ | 49.97 | $ | 2-Mar | Crypto Movement | $ | - | $ | 49.97 | 3-Mar | FDIC SWEEP |
| $ | 50.52 | $ | 2-Mar | Crypto Movement | $ | - | $ | 50.52 | 3-Mar | FDIC SWEEP |
| $ | 75.20 | $ | 2-Mar | Crypto Movement | $ | - | $ | 75.22 | 3-Mar | FDIC SWEEP |
| $ | - | $ | 25.00 | 5-Mar | Crypto Movement | $ | 25.00 | $ | - | 1-Mar | FDIC SWEEP |
| $ | - | $ | 5.00 | 5-Mar | Crypto Movement | $ | 5.00 | $ | - | 1-Mar | FDIC SWEEP |
| $ | - | $ | 2.00 | 5-Mar | Crypto Movement | $ | 2.00 | $ | - | 5-Mar | FDIC SWEEP |
| $ | - | $ | 4.34 | 5-Mar | Crypto Movement | $ | 4.34 | $ | - | 5-Mar | FDIC SWEEP |
| $ | - | $ | 49.97 | 5-Mar | Crypto Movement | $ | 49.97 | $ | - | 5-Mar | FDIC SWEEP |
| $ | - | $ | 20.00 | 5-Mar | Crypto Movement | $ | 20.00 | $ | - | 5-Mar | FDIC SWEEP |
| $ | - | $ | 48.23 | 5-Mar | Crypto Movement | $ | 48.23 | $ | - | 5-Mar | FDIC SWEEP |
| $ | - | $ | 15.00 | 5-Mar | Crypto Movement | $ | 15.00 | $ | - | 5-Mar | FDIC SWEEP |
| $ | - | $ | 20.00 | 5-Mar | Crypto Movement | $ | 20.00 | $ | - | 5-Mar | FDIC SWEEP |
| $ | - | $ | 59.99 | 5-Mar | Crypto Movement | $ | 59.99 | $ | - | 5-Mar | FDIC SWEEP |
| $ | - | $ | 29.99 | 5-Mar | Crypto Movement | $ | 29.99 | $ | - | 5-Mar | FDIC SWEEP |
| $ | - | $ | 127.30 | 5-Mar | Crypto Movement | $ | 127.30 | $ | - | 5-Mar | FDIC SWEEP |
| $ | 4.51 | $ | - | 5-Mar | Crypto Movement | $ | - | $ | 4.51 | 5-Mar | FDIC SWEEP |
| $ | 50.00 | $ | - | 5-Mar | Crypto Movement | $ | - | $ | 50.00 | 5-Mar | FDIC SWEEP |
| $ | - | $ | 33.00 | 5-Mar | Crypto Movement | $ | 33.00 | $ | - | 5-Mar | FDIC SWEEP |
| $ | 19.00 | $ | - | 5-Mar | Crypto Movement | $ | 19.00 | $ | - | 5-Mar | FDIC SWEEP |
| $ | 33.01 | $ | - | 5-Mar | Crypto Movement | $ | - | $ | 33.01 | 5-Mar | FDIC SWEEP |
| $ | - | $ | 1.81 | 11-Mar | Crypto Movement | $ | - | $ | 1.81 | 29-Mar | FDIC SWEEP |
| $ | 538.00 | $ | - | 22-Mar | Crypto Movement | $ | - | $ | 538.00 | 22-Mar | FDIC SWEEP |
| $ | - | $ | 2,107.99 | 22-Mar | Crypto Movement | $ | 2,107.99 | $ | - | 22-Mar | FDIC SWEEP |

**ACH DEPOSIT/ Crypto Movement**

| $ | 1,421.97 | $ | 3,099.67 | $ | (1,677.70) | FDIC/CRYPTO Match | $ | 3,099.67 | $ | 1,421.97 | $ | 1,677.70 | FDIC /CRYPTO Match |

These figures here are the only numbers on statement that match on both ends, the remainder are grouped and then misrepresented

**FDIC SWEEP TOTAL**

FURTHERMORE  2021
David Deposits 2021   ACH   $   24,137.38
$   26,886.31
"Contributions Seem to be Stolen"
ROBINHOOD CRYPTO LLC   SEEMS TO BE HELD RESPONSIBLE



| | | | Date | | |
|---|---|---|---|---|---|
| $ | - | $ | 149,97 | 5-Mar | 0 |
| $ | - | $ | 249,99 | 5-Mar | 33 |
| $ | - | $ | 306,00 | 5-Mar | 180 |
| $ | - | $ | 2,00 | 5-Mar | 0 |
| $ | - | $ | 3,00 | 5-Mar | 0 |
| $ | 15,00 | $ | - | 5-Mar | 10 |
| $ | 27,00 | $ | - | 5-Mar | 0 |
| $ | - | $ | 200,01 | 5-Mar | 0 |
| $ | | $ | 3,00 | 5-Mar | 127,3 |
| $ | 25,00 | $ | - | 5-Mar | 29,99 |
| $ | 25,36 | $ | - | 5-Mar | 59,99 |
| $ | 35,00 | $ | - | 5-Mar | 20 |
| $ | - | $ | 139,96 | 5-Mar | 15 |
| $ | - | $ | 2,89 | 5-Mar | 48,03 |
| $ | - | $ | 399,87 | 5-Mar | 50 |
| $ | - | $ | 186,00 | 5-Mar | 36 |
| $ | - | $ | 1,00 | 5-Mar | 5 |
| $ | 1,25 | $ | - | 5-Mar | 40,97 |
| $ | 13,21 | $ | - | 5-Mar | 25 |
| $ | 100,00 | $ | - | 5-Mar | 4,34 |
| $ | 0,15 | $ | - | 5-Mar | 2 |
| $ | 20,06 | $ | - | 5-Mar | 5 |
| $ | 41,25 | $ | - | 5-Mar | 264,89 |
| $ | 30,00 | $ | - | 5-Mar | 0 |
| $ | 30,70 | $ | - | 5-Mar | 2107,99 |
| $ | 199,84 | $ | - | 5-Mar | 2161,53 |
| $ | 99,99 | $ | - | 5-Mar | 0 |
| $ | 30,01 | $ | - | 5-Mar | 0 |
| $ | - | $ | 1,71 | 11-Mar | 541,06 |
| $ | - | $ | 0,83 | 11-Mar | 0 |
| $ | - | $ | 0,60 | 11-Mar | 0 |
| $ | - | $ | 21,00 | 11-Mar | 1,8 |
| $ | - | $ | 71,01 | 11-Mar | 0 |
| $ | - | $ | 2.058,99 | 11-Mar | 0,71 |
| $ | 1,81 | $ | - | 11-Mar | |
| $ | - | $ | 2,99 | 11-Mar | |
| $ | - | $ | 1.380,69 | 11-Mar | |
| $ | 600,00 | $ | - | 11-Mar | |
| $ | 499,96 | $ | - | 11-Mar | |
| $ | 23,89 | $ | - | 11-Mar | |
| $ | 100,00 | $ | - | 11-Mar | |
| $ | 149,02 | $ | - | 11-Mar | |
| $ | - | $ | 0,02 | 11-Mar | |
| $ | 1,01 | $ | - | 11-Mar | |
| $ | 1,00 | $ | - | 11-Mar | |
| $ | - | $ | 541,06 | 22-Mar | **Matches Deposit** |
| $ | 538,00 | $ | - | 22-Mar | |
| $ | 1,300,00 | $ | 2.161,53 | 22-Mar | |
| $ | 1,726,06 | $ | - | 22-Mar | |
| $ | - | $ | 2.107,99 | 22-Mar | |
| $ | 0,79 | $ | - | 22-Mar | |
| $ | 419,54 | $ | - | 22-Mar | |
| $ | 712,56 | $ | - | 22-Mar | |
| $ | **9,194,18** | $ | **11,204,27** | March Totals | |
| | | $ | **2,010,09** | Net Suspense | |

| Month | Robinhood 2020 - Monthly Reconciliation | | | Notes : | Discrepencies | |
|---|---|---|---|---|---|---|
| | Debit | | Credit | | | |
| January | $- | | $- | Did Not Trade or Use Robinhood | - | |
| b | | | $- | - | - | |
| February | $- | | $ | 567.85 | Account Activity - Month End Totals | Does Not Balance | |
| b | $ | 368.95 | $- | Executed Trades Pending Settlement | Does Not Balance | |
| March | $ | 22,135.12 | $ | 18,689.04 | Account Activity - Month End Totals | Does Not Balance | |
| b | $ | 8,084.82 | $ | 3,451.79 | Executed Trades Pending Settlement | Does Not Balance | |
| April | $ | 31,389.76 | $ | 20,566.99 | Account Activity - Month End Totals | Does Not Balance | |
| b | $ | 13,909.70 | $ | 10,161.70 | Executed Trades Pending Settlement | Does Not Balance | |
| May | $ | 60,402.04 | $ | 62,839.09 | Account Activity - Month End Totals | Does Not Balance | |
| b | $- | | $- | Executed Trades Pending Settlement | - | |
| June | $ | 80,156.10 | $ | 76,209.46 | Account Activity - Month End Totals | Does Not Balance | |
| b | $ | 4,929.97 | $ | 15,033.60 | Executed Trades Pending Settlement | Does Not Balance | |
| July | $ | 24,884.81 | $ | 37,617.92 | Account Activity - Month End Totals | Does Not Balance | |
| b | $- | | $- | Executed Trades Pending Settlement | - | |
| August | $ | 8,921.70 | $ | 11,399.18 | Account Activity - Month End Totals | Does Not Balance | |
| b | $- | | $- | Executed Trades Pending Settlement | - | |
| September | $ | 239.62 | $ | 239.63 | Account Activity - Month End Totals | Does Not Balance | |
| b | $- | | $- | Executed Trades Pending Settlement | - | |
| c | $- | | $ | 0.01 | FDIC SWEEP - GOLDMAN SACHS | $ | 0.01 |
| October | $ | 419.10 | $ | 419.09 | Account Activity - Month End Totals | Does Not Balance | |
| b | $- | | $- | Executed Trades Pending Settlement | - | 10/ 20/ 2020 (Short Term Transactions for Covered Lots) Proceeds From Broker & barter exchange (ETHERUM 0.194233 (73.51 Cost - 73.56 Proceeds) Amounts Match FDIC Sweep labeled Crypto Movement |
| c | $ | 73.39 | $ | 73.38 | FDIC SWEEP - No Program Bank Indicated | $ | 0.01 | |
| November | $- | | $- | Account Activity - Month End Totals | - | |
| b | $- | | $- | Executed Trades Pending Settlement | - | |
| December | $ | 1,000.00 | $ | 1,000.00 | Account Activity - Month End Totals | Balanced | $1000 Unaccounted (ACH Deposit) |
| b | $- | | $- | Executed Trades Pending Settlement | - | |
| c | $ | 500.00 | $ | 500.00 | FDIC SWEEP - No Program Bank Indicated | ($500) | Withdrawl Funds Unaccounted , & added to 2021's FDIC Suspense |
| Totals Congruent | $ | 257,415.08 | $ | 258,768.73 | -> | ($1,353.65) | Suspense |
| Only Account Activity | $ | 229,548.25 | $ | 229,548.25 | -> | Balanced | |
| Executed Trades Pending | $ | 27,293.44 | $ | 28,647.09 | -> | ($1,353.65) | Matched with Grand Total Suspense |

| FDIC Sweep | $ | 573.39 | $ | 573.39 | | -> | Balanced | |
|---|---|---|---|---|---|---|---|---|
| | | | | | | (ACCOUNTING) | ($2,353.65) | |

| Month | Robinhood 2021 - Monthly Reconciliation | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| | Debit | | Credit | | Notes : | | Discrepencies | |
| January | $- | | $- | | Did Not Trade or Use Robinhood | | - | |
| b | $ | - | $- | | - | | - | |
| February | $- | | $ | 5,000.41 | Account Activity - Month End Totals | | Does Not Balance | |
| b | $ | - | $- | | Executed Trades Pending Settlement | | - | |
| c | $ | 5,000.41 | $- | | FDIC SWEEP - GOLDMAN SACHS | | Does Not Balance | $5,000 Initial Discovery & Filing of Lawsuit |
| March | $ | 42,956.54 | $ | 36,937.57 | Account Activity - Month End Totals | | Does Not Balance | |
| b | $ | 507.50 | $- | | Executed Trades Pending Settlement | | Does Not Balance | |
| c | $ | 11,044.94 | $ | 6,044.74 | FDIC SWEEP - GOLDMAN SACHS | $ | 0.21 | |
| April | $ | 45,121.81 | $ | 46,176.17 | Account Activity - Month End Totals | | Does Not Balance | |
| b | $ | 209.12 | $ | 576.15 | Executed Trades Pending Settlement | | Does Not Balance | |
| c | $ | 610.90 | $ | 638.99 | FDIC SWEEP - GOLDMAN SACHS | $ | 28.30 | |
| May | $ | 49,912.26 | $ | 42,111.62 | Account Activity - Month End Totals | | Does Not Balance | |
| b | $ | 2,527.50 | $ | 1,040.78 | Executed Trades Pending Settlement | | Does Not Balance | |
| c | $ | 402.83 | $ | 374.53 | FDIC SWEEP NO PROGRAM Bank Indicated | | - | |
| June | $ | 26,261.33 | $ | 27,540.63 | Account Activity - Month End Totals | | Does Not Balance | |
| b | $ | 656.86 | $ | 594.80 | Executed Trades Pending Settlement | | Does Not Balance | |
| c | $- | | $- | | FDIC SWEEP - No Program Bank Indicated | | - | |
| July | $ | 4,741.08 | $ | 9,880.72 | Account Activity - Month End Totals | | Does Not Balance | |
| b | $ | 353.13 | $ | 1,533.56 | Executed Trades Pending Settlement | | Does Not Balance | |
| c | $- | | $- | | FDIC SWEEP - No Program Bank Indicated | | - | |
| August | $ | 3,766.07 | $ | 5,111.97 | Account Activity - Month End Totals | | Does Not Balance | |
| b | $- | | $- | | Executed Trades Pending Settlement | | - | |
| c | $ | 798.47 | $ | 798.47 | FDIC SWEEP - No Program Bank Indicated | | FDIC Balance - $0 | |
| September | $ | 369.40 | $ | 369.40 | Account Activity - Month End Totals | | Balanced | |
| b | $ | - | $ | - | Executed Trades Pending Settlement | | - | |
| c | $ | 369.40 | $ | 369.40 | FDIC SWEEP - No Program Bank Indicated | | FDIC Balance - $0 | |
| October | $ | 1,000.00 | $ | 1,000.00 | Account Activity - Month End Totals | | Balanced | |
| b | $- | | $- | | Executed Trades Pending Settlement | | - | |
| c | $ | 1,000.00 | $ | 1,000.00 | FDIC SWEEP - No Program Bank Indicated | | FDIC Balance - $0 | |
| November | $ | 483.51 | $ | 482.49 | Account Activity - Month End Totals | | Does Not Balance | |
| b | $- | | $- | | Executed Trades Pending Settlement | | - | |
| c | $ | 475.29 | $ | 475.29 | FDIC SWEEP - No Program Bank Indicated | | FDIC Balance - $0 | |

| | | | | | | |
|---|---|---|---|---|---|---|
| December | $ | 5,911.88 | $ | 5,912.91 | Account Activity - Month End Totals | Does Not Balance |
| b | $- | | $- | | Executed Trades Pending Settlement - | |
| c | $ | 3,861.75 | $ | 3,861.76 | **FDIC SWEEP - GOLDMAN SACHS** | $    0.01 |

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| Totals Congruent | $ | **208,341.98** | $ | **197,832.36** | -> | $10,509.62 | Matches - Total Pending Trades & FDIC Sweep Year end totals for 2021 |
| Only Account Activity | $ | 180,523.88 | $ | 180,523.89 | -> | $    0.01 | Penny Discrepencies |
| Executed Trades Pending | $ | 4,254.11 | $ | 3,745.29 | -> | ($508.82) | **Suspense** |
| **FDIC Sweep** | $ | **23,563.99** | $ | **13,563.18** | -> | ($10,000.81) | **2021 Year End Total** |
| **MATCHED (See Formulas)** | $ | **18,563.58** | $ | **13,563.18** | | | |

**SUMMARY FOR REVIEW**

*Program Provider : GOLDMAN SACHS*

| | | | | |
|---|---|---|---|---|
| **DISCOVERY :** | **FRAUD - ROBINHOOD** | | ($10,500.81) | **Total combined two year FDIC Suspense** |
| **Total FDIC SWEEP 2021** | $    **18,563.58** | | ($508.82) | Other Suspense - Pending Trades 2021 |
| Suspense Deposit Missing (FEB) | $    5,000.41 | | ($12,354.46) | Total Accounting Descrepencies on Statements |
| 2020 Suspense | $    1,331.30 | $    (22.35) Suspense | ($1,870.88) | CC Disputed Claim/Chargeback |
| Total Crypto Cost Basis | $    24,895.29 | **Reported by Robinhood** | ($51,581.20) | Investment Capital Contributed (All Parties Loss) Five Star tax Service LLC |
| | Confirms Internal Trade - Without Consent | | ($66,315.36) | **Total Accounting Descrepencies** |
| | | | ($16,379.89) | 24.7% Tax On Total Accounting Descrepencies |
| | *$75,000 (Federal Court Minimum Requirement)* -> | | **($82,695.25)** | **Basis of Federal Lawsuit** |

# Robinhood Securities, LLC & Robinhood Financial LLC Insured Network Deposit Sweep Program



### SEE HIGHLIGHTS BELOW IN RED & YELLOW.

## Disclosures.

### 1. Introduction.

Robinhood Securities, LLC and Robinhood Financial LLC (collectively "Robinhood," "we," "our" or "us") offer customers ("Customer," "you," or "your") an automatic investment option ("Sweep Service") for available free credit balances in your brokerage account with us ("Account"). Under this option, available cash in your Account will be deposited through the Insured Network Deposit SM" ("IND") service into interest–bearing deposit accounts ("Deposit Accounts") at one or more banks set forth in the Priority List (as discussed below) that can be accessed at https://rbnhd.co/program–banks (each a "Program Bank"). To participate in the Sweep Service, you must allow deposits to at least one Program Bank on the Priority List.

These Sweep Service disclosures ("Disclosures") contain important information and disclosures concerning the Sweep Service and how we will treat free credit balances in your Account. These Disclosures supplement the terms and conditions in your agreement with us ("Customer Agreement") governing your Account. In the event of a conflict between the terms of the Customer Agreement and the terms of these Disclosures, the terms of these Disclosures will govern the Sweep Service.

Funds in the Deposit Accounts at each Program Bank are eligible for deposit insurance by the Federal Deposit Insurance Corporation ("FDIC") up to a specified amount of principal and accrued interest for each insurable capacity (e.g., individual, joint, IRA, etc.), when aggregated with all other deposits you hold in the same insurable capacity at the same Program Bank. The FDIC insurance limit applicable to each insurable capacity is referred to in these Disclosures as the "Maximum FDIC Insurance Amount."

The Maximum FDIC Insurance Amount for each insurable capacity is currently $250,000. For purposes of the Maximum FDIC Insurance Amount, you must aggregate all other deposits held in the same insurable capacity at a Program Bank. For example, funds in the Deposit Accounts at a Program Bank held by an individual are insured up to $250,000 with all other deposits held in an individual capacity at that Program Bank.

**Free credit balances awaiting investment in securities in your Account are eligible for coverage by the Securities Investor Protection Corporation ("SIPC") before such funds are swept to the Deposit Accounts. However, funds deposited in Deposit Accounts are covered**



**ROBINHOOD:** ROBINHOOD SECURITIES, LLC & ROBINHOOD FINANCIAL LLC INSURED NETWORK DEPOSIT SWEEP PROGRAM

by the FDIC, and are not eligible for coverage by SIPC. You should review carefully the section of these Disclosures titled "Information About FDIC Insurance and SIPC."

We will deposit, as your agent, the available cash in your Account into Deposit Accounts in each Program Bank on the Priority List up to the deposit limit of $248,000 (the "Applicable Deposit Limit") per Program Bank. (The Applicable Deposit Limit is less than the Maximum FDIC Insurance Amount to allow interest to be accrued in each Deposit Account.) If you deposit more than $248,000 at a given Program Bank, your additional funds will be swept into Deposit Accounts at other Program Banks. Accordingly, your funds may be eligible for FDIC insurance up to $250,000 per bank times the number of eligible Program Banks, subject to applicable limitations. If your funds are swept to all the eligible Program Banks on the Priority List (i.e., $248,000 has been deposited at each eligible Program Bank), any additional funds will be deposited into designated "Excess Banks" without limit and without regard to maximum available FDIC insurance coverage.

If the FDIC changes the Maximum FDIC Insurance Amount, we may adjust the Applicable Deposit Limit without prior notice to you. We will revise these Disclosures to include the new Applicable Deposit Limit and inform you of the change by email, by sending you a message in your Robinhood mobile application (the "App"), or by other means as provided in your Customer Agreement. If we change the Applicable Deposit Limit as a result of an increase or decrease in the Maximum FDIC Insurance Amount, we may (but are not required to) move your funds from one Program Bank on the Priority List to another to account for the change in the Applicable Deposit Limit. For example, if the Maximum FDIC Insurance Amount decreases, we may (but are not required to) move funds from one Program Bank to another Program Bank in order for your funds to remain within the Maximum FDIC Insurance Amount. In contrast, if the Maximum FDIC Insurance increases, we may (but are not required to) move funds from an Excess Bank to a Program Bank to account for the increase in the Maximum FDIC Insurance Amount.

**Any deposits (including certificates of deposit ("CDs")) that you maintain in the same ownership capacity directly with a Program Bank, or through an intermediary (such as Robinhood or another broker regardless of the number of brokerage accounts), will be aggregated with deposits in your Deposit Accounts at the Program Bank for purposes of the Maximum FDIC Insurance Amount.**

Each Deposit Account constitutes a direct obligation of the respective Program Bank (or the Excess Bank as applicable) and is not directly or indirectly an obligation of Robinhood. You can obtain publicly available financial information concerning each Program Bank at www.ffiec.gov/nic or by contacting the FDIC Public Information Center by mail at L. William Seidman Center, Virginia Square, 3501 North Fairfax Drive, Arlington, Virginia 22226 or by phone at 703–562–2200. Robinhood does not guarantee or warrant in any way the financial condition of the Program Banks or an Excess Bank, the accuracy of any publicly available financial information concerning the Program Banks or an Excess Bank, or the interest rates that any of the Program Banks or an Excess Bank may pay.

**ROBINHOOD:** ROBINHOOD SECURITIES, LLC & ROBINHOOD FINANCIAL LLC INSURED NETWORK DEPOSIT SWEEP PROGRAM



You will not have a direct account relationship with the Program Banks. Robinhood, as your agent, will establish the Deposit Accounts for you at each Program Bank and make deposits to and withdrawals from the Deposit Accounts. Robinhood may receive a fee from each Program Bank. The amount of the fee paid to Robinhood, if any, will affect the interest rate paid on the Deposit Accounts. You should review carefully the section of these Disclosures titled "Information About Your Relationship with Robinhood and the Program Banks."

Interest rates on the Deposit Accounts will vary based upon prevailing economic and business conditions. The Program Banks do not have a duty to offer the highest rates available or rates that are comparable to money market mutual funds. By comparison, money market mutual funds generally seek to achieve the highest rate of return consistent with their investment objectives, which can be found in their prospectuses.

The information in these Disclosures applies, unless otherwise indicated, to each Account for which you are a client of record, whether as an individual, trustee, executor, custodian or in any other capacity, and is furnished to you in each of such capacities in respect of all such accounts.

**Your Account is not a deposit account, and Robinhood is not a bank. Only funds that are swept from your Account to the Deposit Accounts are funds held at a bank subject to applicable FDIC insurance limits.**

2. **Operation of the IND Service.**

A. **The Priority List**

The Priority List of available Program Banks into which your funds may be deposited will be available on our Website no later than the date on which we make the Sweep Service available to you. The Priority List available on our Website does not necessarily identify the order of the Program Banks in which the Deposit Accounts will be opened for you and your funds will be deposited (the "Deposit Sequence"). To find out the Deposit Sequence applicable to you, please contact Robinhood Customer Service at support.robinhood.com.

The Priority List will also include one or more Excess Banks that will accept your funds without limit and without regard to the Maximum FDIC Insurance Amount if all Program Banks on the Priority List have received funds up to the Applicable Deposit Limit. If all your funds are withdrawn from an Excess Bank, the next time your funds are available for deposit in an Excess Bank your funds may be deposited in a different Excess Bank.

You should review the Priority List carefully. You may not change the order in which the Program Banks on the Priority List will receive your funds. However, you may, at any time, designate a Program Bank as ineligible to receive your funds by contacting Robinhood Customer Service at support.robinhood.com. You may want to do this, for example, if you already have a separate



account at a Program Bank that could impact the Maximum FDIC Insurance Amount available to you at the Program Bank.

Designating a Program Bank as ineligible will result in your funds being deposited into Deposit Accounts only at the other Program Banks on the Priority List. In addition, you may at any time instruct us to remove your funds from a Program Bank, close your Deposit Accounts with the Program Bank and designate the Program Bank as ineligible to receive future deposits. Unless you direct us to place your funds in a different investment, your funds from a closed Deposit Account will be deposited in Deposit Accounts at the first available Program Bank set forth on the Priority List, as amended by you. A reduction in the number of Program Banks on the Priority List will reduce the aggregate amount of FDIC insurance available to you. You may not designate all of the Excess Banks as ineligible to receive your funds.

The Priority List may change. Please review the section "Changes to the Priority List."

### B.  Types of Deposit Accounts

Robinhood makes available to you two linked deposit accounts, which will consist either of two transaction accounts (each a "TA"), each of which will be a negotiable order of withdrawal ("NOW") account or a demand deposit account ("DDA"), or one TA and a money market deposit account ("MMDA") –– a type of savings deposit.

If a TA is a NOW account, Robinhood will only deposit the funds of individuals, not for–profit entities and government entities in that Program Bank. Ineligible customers (i.e., customers that are not individuals, not for–profit entities and government entities) will not have Program Banks offering only NOW accounts on their Priority List. If a TA is a DDA, then there are no eligibility restrictions and Program Banks offering DDAs may appear on any customer's Priority List. The MMDAs and TAs are non–transferable between customers or to other parties.

### C.  Deposit Procedures

When free credit balances in your Account are first available for deposit, Robinhood, as your agent, will open either two TAs or an MMDA and a linked TA on your behalf at one or more of the Program Banks on the then–current Priority List in the order set forth in your Deposit Sequence. Once your funds in the Deposit Accounts at a Program Bank reach the Applicable Deposit Limit, Robinhood, as your agent, will open either two TAs or an MMDA and TA for you at the next Program Bank on the Priority List and place your additional funds in that Program Bank.

In the event that you have deposits equal to the Applicable Deposit Limit in the Deposit Accounts at each of the available Program Banks on the Priority List, excess funds will be swept into an Excess Bank that will accept your funds without limit and without regard to the Maximum FDIC Insurance Amount (currently $250,000). An Excess Bank may be a Program Bank on the Priority List that has received funds up to the Applicable Deposit Limit, or a Program Bank that acts solely as an Excess Bank. If the Excess Bank is not a Program Bank on the Priority List, the excess funds deposited to the Excess Bank may be eligible for insurance coverage depending on the amount of



excess funds deposited with the Excess Bank together with any other funds you have deposited with the Excess Bank in the same insurable capacity. It is your obligation to monitor your funds deposited at each Program Bank (including any Excess Bank), whether funds are deposited through Robinhood or directly with the applicable bank, to determine whether your balances are at or near the Maximum FDIC Insurance Amount. You may at any time request to withdraw funds from the Program Banks, including the Excess Bank, and place them elsewhere, as explained below.

If Robinhood has opened an MMDA at a Program Bank on your behalf, Robinhood, as your agent, will deposit available free credit balances from your Account into your MMDA at each such Program Bank as set forth above. As necessary to satisfy withdrawals, funds will be transferred from your MMDA to the related TA at each such Program Bank and withdrawals will be made from the TA. The applicable Program Bank and Robinhood in their discretion may determine a minimum, or "threshold", amount to be maintained in your TA to satisfy debits in your Account.

Federal banking regulations limit the transfers from an MMDA to a total of six (6) during a monthly statement cycle. At any point during a month in which transfers from an MMDA at a Program Bank have reached the regulatory limit, all funds will be transferred from that MMDA to the linked TA at the Program Bank and no funds will be transferred from the linked TA to that MMDA for the remainder of the month. Deposits for the remainder of the month into this Program Bank will be made to the TA. At the beginning of the next month, funds on deposit in the TA will be transferred to the MMDA, minus any threshold amount to be maintained in the TA. The limits on MMDA transfers will not limit the number of withdrawals you can make from funds on deposit at a Program Bank or the amount of FDIC insurance coverage for which you are eligible. These limits do not apply at any Program Bank where your funds are held solely in TAs.

### D. Withdrawal Procedures

All withdrawals necessary to satisfy net debits in your Account will be made by Robinhood as your agent. A net debit is created when there is insufficient cash available in your Account to satisfy a securities purchase or a request for a withdrawal of funds from your Account, for example, when you withdraw funds or make purchases with your debit card. Please see your Customer Agreement for further information regarding the way transactions in your Account may affect your deposits in the Program Banks. You cannot draw directly against the Deposit Accounts established for you at the Program Banks, whether by check, debit card, funds transfer or otherwise.

All withdrawals will be made from your TAs (even if Robinhood has opened an MMDA at a Program Bank on your behalf). If a withdrawal of funds from your Deposit Accounts is necessary to satisfy a net debit in your Account, funds will be withdrawn on a "last in, first out" basis, meaning that funds will be withdrawn from your TAs at the Program Banks beginning with the Program Bank with the lowest priority in your Deposit Sequence at which your funds have been deposited. If there are insufficient funds at that Program Bank, funds will be withdrawn from each Program Bank in your Deposit Sequence (lowest priority to highest priority) until the debit is satisfied. For Program Banks in which we have opened both an MMDA and a TA on your behalf, if funds in the



TA at such Program Bank from which funds are being withdrawn are insufficient to satisfy a debit, funds in the related MMDA at that Program Bank will be transferred to the TA to satisfy the debit, plus funds to maintain any TA threshold amount before proceeding to the next Program Bank on the Priority List.

When you use your card for certain types of purchases, such as those made at restaurants, your purchase may be "preauthorized" for an amount that does not include the full amount gratuities or incidental expenses that are included in the charge when it is presented to us for payment. Other small dollar transactions may be completed even though we did not approve the charge at the time you initiated it. If, in such instances, the final amount that is charged to your Account contributes to a net debit in your Account, and there are insufficient funds in the Deposit Accounts to satisfy those charges, you will remain liable for payment of those charges.

Pursuant to federal banking regulations, the Program Banks reserve the right to require seven days' prior written notice before you withdraw or transfer funds from a NOW account or an MMDA. DDAs are not subject to this restriction.

### E. Changes to the Priority List

One or more of the Program Banks included on the Priority List may be replaced with a Program Bank not previously included on the Priority List, a Program Bank may be deleted from the Priority List, or the order of Program Banks in your Deposit Sequence may change. In general, you will receive notification by email in advance of changes that result in the addition of a Program Bank to the Priority List and have an opportunity to designate a Program Bank as ineligible to receive your deposits before any funds are deposited into a new Program Bank, or to remove your participation in the Sweep Service. If you receive notice that the Priority List has changed, it is your obligation to review the Priority List on our Website. The current Priority List will always be available on our Website. Any reduction of the Priority List, whether through elimination of Program Banks from the Priority List, a Program Bank's failure to accept deposits or your instruction not to place funds at one or more Program Banks, will reduce the maximum amount of FDIC insurance that may be available to you.

In the event that the order of Program Banks in your Deposit Sequence has changed, your previously deposited funds will not be reallocated based on the new sequence. Deposits and withdrawals of your funds made after a change to the Deposit Sequence will occur as described above under "Deposit Procedures" and "Withdrawal Procedures", respectively.

On any day, a Program Bank may be closed for business or temporarily unable to accept your funds. In such event, your funds will be placed at the next Program Bank on the Priority List. When the Program Bank that could not accept your funds is again able to accept your funds, available cash balances in your account will be placed in that Program Bank.

If a Program Bank at which you have Deposit Accounts no longer makes the Deposit Accounts available, you will be notified by Robinhood and given the opportunity to establish a direct depository relationship with the Program Bank, subject to its rules with respect to establishing



and maintaining deposit accounts. If you choose not to establish a direct depository relationship with the Program Bank, your funds will be transferred to the next available Program Bank on the Priority List. The consequences of maintaining a direct depository relationship with a Program Bank are discussed below under the section titled "Information About Your Relationship with Robinhood and the Program Banks – Relationship with Robinhood."

### F.  Interest on Balances in the Deposit Accounts

Each MMDA and TA at each Program Bank will earn the same interest rate and all Program Banks will pay the same interest rate across all customers. The interest rates on the Deposit Accounts will be determined by the amount the Program Banks are willing to pay on the Deposit Accounts minus the fees, if any, paid to Robinhood as set forth below under "Fees."

You may access the current interest rate on the Deposit Accounts on our Website and in the App. Interest rates may change daily and will be available on the business day the rates are set. Interest will accrue on Deposit Account balances from the day funds are deposited into the Deposit Accounts at a Program Bank through the business day preceding the date of withdrawal from the Deposit Accounts at the Program Bank. Interest will be compounded daily and credited monthly.

The interest rates paid with respect to the Deposit Accounts at a Program Bank may be higher or lower than the interest rates available to depositors making deposits directly with the Program Bank or other depository institutions in comparable accounts, or other options in which you can invest free credit balances. You should compare the terms, interest rates, required minimum amounts, and other features of the Sweep Service with other accounts and alternative investments. Robinhood is not responsible for negotiating interest rates on your behalf.

If, on the last day of any month, the interest credited to your Deposit Account at a Program Bank has caused your deposits at such Program Bank to exceed the Maximum FDIC Insurance Amount, Robinhood, as your agent, may (but shall not be required to) withdraw the excess from that Program Bank and deposit it into the next Program Bank on the Priority List in which your existing deposits, combined with the excess amount being deposited, would be less than or equal to the Maximum FDIC Insurance Amount. If there are no Deposit Accounts at Program Banks on the Priority List for which such a deposit would result in your deposits being less than or equal to the Maximum FDIC Insurance Amount, then the excess amount will be swept into an Excess Bank that will accept your funds without limit, as provided in the section above titled "Operation of the Sweep Service – Deposit Procedures."

### G.  Information About Your Deposit Accounts

You will not receive separate trade confirmations with respect to deposits to and withdrawals from the Deposit Accounts. All activity with respect to your Deposit Accounts will appear on your Account statement. For each statement period, your Account statement will reflect:

- All deposits to and withdrawals from your Deposit Accounts



- The opening and closing balances of the Deposit Accounts at each Program Bank

- The annual percentage yield ("APY"), interest rate and interest earned on Deposit Account balances

Robinhood is responsible for your statement, not the Program Banks. You may contact us by visiting support.robinhood.com if you have any questions about Deposit Account transactions on your statement.

You may obtain information about your Deposit Accounts, including balances and the current interest rates, by contacting customer service at support.robinhood.com or by accessing your Account through our Website or in the App.

### H.  Notices

All notices described in these Disclosures may be made in accordance with the notice provisions of your Customer Agreement.

### I.  Changes to the IND Service

Robinhood may, in our discretion, modify the terms, conditions and procedures of the IND service with thirty (30) days' prior notice to you.


### 3.  Information About Your Relationship with Robinhood and the Program Banks

### A.  Relationship with Robinhood

Robinhood is acting as your agent in establishing the Deposit Accounts at each Program Bank, depositing funds into the Deposit Accounts, withdrawing funds from the Deposit Accounts and transferring funds among the Deposit Accounts. Deposit Account ownership will be evidenced by a book entry on the account records of each Program Bank and by records maintained by Robinhood as your custodian. No evidence of ownership, such as a passbook or certificate will be issued to you. Your Account statements will reflect the balances in your Deposit Accounts at the Program Banks. Retain the Account statements for your records. You may at any time obtain information about your Deposit Accounts on our Website, through the App, or by contacting customer service at support.robinhood.com.

Unless you establish the Deposit Accounts directly with a Program Bank as described below, all transactions with respect to your Deposit Accounts must be directed by Robinhood and all information concerning your Deposit Accounts can only be obtained from Robinhood. The Program Banks (including Excess Banks as applicable) have no obligation to accept instructions from you with respect to your Deposit Accounts or provide you with information concerning your Deposit Accounts.



Robinhood may, in its sole discretion, terminate your use of the Deposit Accounts as a sweep investment option. If Robinhood terminates your use of the Deposit Accounts as a sweep investment option, you may establish a direct depository relationship with each Program Bank, subject to its rules with respect to maintaining deposit accounts.

Similarly, if you decide to terminate your participation in the Sweep Service, you may establish a direct relationship with each Program Bank by requesting to have your existing Deposit Accounts established directly in your name at each Program Bank, subject to each Program Bank's rules with respect to establishing and maintaining accounts.

Establishing your Deposit Accounts in your name at a Program Bank will separate those accounts at such Program Bank from your Account. Your accounts balances with such Program Bank will no longer be reflected in your Account statement and Robinhood will have no further responsibility concerning Deposit Accounts that you have decided to convert into separate and direct accounts with such Program Bank.

## B. Relationship with the Program Banks

As described above, you will not have a direct account relationship with the Program Banks with respect to your Deposit Accounts established under the Sweep service. However, each Deposit Account constitutes an obligation of a Program Bank and is not directly or indirectly an obligation of Robinhood. You can obtain publicly available financial information concerning each Program Bank at www.ffiec.gov/nicpubweb/nicweb/nichome.aspx or by contacting the FDIC Public Information Center by mail at L. William Seidman Center, Virginia Square, 3501 North Fairfax Drive, Arlington, Virginia 22226 or by phone at 703–562–2200. Robinhood does not guarantee or warrant in any way the financial condition of the Program Banks, the accuracy of any publicly available financial information concerning such Program Banks or the interest rates offered by any Program Bank.

## C. Fees

Each Program Bank will pay Robinhood a fee equal to a percentage of the daily deposit balance in your Deposit Accounts at the Program Bank, up to 1% on an annual basis. In its discretion, Robinhood may change the fee or range of fees, and may vary the amount of the change among clients. The fee may vary from Program Bank to Program Bank. The amount of the fee received by Robinhood will affect the interest rate paid by the Program Bank on your Deposit Accounts.

Upon request, Robinhood will provide you with information about Robinhood's compensation arrangements with respect to its sweep investments.

Other service providers may receive fees from us or the Program Banks.

Other than applicable fees imposed by Robinhood on your Account, there will be no charges, fees or commissions imposed on your Account with respect to the Sweep Service.



### D. Margin

Cash swept to the Deposit Accounts through the Sweep service will be used to illustrate "buying power" for your Account, because cash swept to the Deposit Accounts can always be withdrawn from the Deposit Accounts and used for securities transactions. However, cash swept to the Deposit Accounts through the Sweep Service will not count as "equity" in your Account for the purposes of initial margin or maintenance margin under the margin rules, including Regulation T of the Board of Governors of the Federal Reserve System and Rule 4210 of the Financial Industry Regulatory Authority.

### 4. Information About FDIC Insurance and SIPC

### A. General Information

The Deposit Accounts (including principal and accrued interest) are insured by the FDIC, an independent agency of the U.S. Government, up to the Maximum FDIC Insurance Amount, which is currently $250,000, for all deposits held in the same insurable capacity at any one Program Bank (and an Excess Bank, as applicable). Your funds become eligible for deposit insurance immediately upon placement into a Deposit Account at a Program Bank (or an Excess Bank, as applicable). Any accounts or deposits that you may maintain directly with a particular Program Bank (or an Excess Bank, as applicable), or through any other intermediary, in the same insurable capacity in which the Deposit Accounts are maintained would be aggregated with the Deposit Accounts for purposes of the Maximum FDIC Insurance Amount.

YOU ARE RESPONSIBLE FOR MONITORING THE TOTAL AMOUNT OF DEPOSITS THAT YOU HOLD WITH ANY ONE PROGRAM BANK (INCLUDING AN EXCESS BANK, AS APPLICABLE), DIRECTLY OR THROUGH AN INTERMEDIARY, IN ORDER TO DETERMINE THE EXTENT OF DEPOSIT INSURANCE COVERAGE AVAILABLE TO YOU ON YOUR DEPOSITS, INCLUDING THE DEPOSIT ACCOUNTS. ROBINHOOD IS NOT RESPONSIBLE FOR ANY INSURED OR UNINSURED PORTION OF THE DEPOSIT ACCOUNTS OR ANY OTHER DEPOSITS.

In the event a Program Bank (or an Excess Bank, as applicable) fails, the Deposit Accounts at that Program Bank (or Excess Bank, as applicable) are insured, together with all other deposits you maintain, directly or indirectly at that Program Bank (or Excess Bank) in the same insurable capacity, up to the Maximum FDIC Insurance Amount, for principal and interest accrued to the day the Program Bank (or Excess Bank) is closed.

Under certain circumstances, if you become the owner of deposits at a Program Bank (or Excess Bank as applicable) because another depositor dies, beginning six months after the death of the depositor the FDIC will aggregate those deposits for purposes of the Maximum FDIC Insurance Amount $250,000 federal deposit insurance limit with any other deposits that you own in the same insurable capacity at the Program Bank (or Excess Bank as applicable). Examples of deposit accounts that may be subject to this FDIC policy include joint accounts, "payable on death"



accounts and certain trust accounts. The FDIC provides the six–month "grace period" to permit you to restructure your deposits to obtain the maximum amount of deposit insurance for which you are eligible.

In the event that federal deposit insurance payments become necessary, payments of principal plus unpaid and accrued interest will be made to you. There is no specific time period during which the FDIC must make insurance payments available, and Robinhood is under no obligation to credit your account with funds in advance of payments received from the FDIC. Furthermore, you may be required to provide certain documentation to the FDIC and Robinhood before insurance payments are made. For example, if you hold deposits as trustee for the benefit of trust participants, you may be required to furnish affidavits and provide indemnities regarding an insurance payment.

If your Deposit Accounts or other deposits at the Program Bank (or Excess Bank as applicable) are assumed by another depository institution pursuant to a merger or consolidation, such deposits will continue to be insured separately, up to the Maximum FDIC Insurance Amount, from the deposits that you might have established with the acquiror until: (i) the maturity date of any time deposits (including certificates of deposit) that were assumed; or (ii) with respect to deposits that are not time deposits, the expiration of a six month period from the date of the acquisition. Thereafter, any assumed deposits will be aggregated with your existing deposits with the acquiror held in the same capacity for purposes of FDIC insurance coverage. Any deposit opened at the acquiror after the acquisition will be aggregated with deposits established with the acquiror for purposes of FDIC insurance coverage.

### B.  Questions About FDIC Insurance Coverage

If you have questions about basic FDIC insurance coverage, you may wish to seek advice from your own attorney, including concerning FDIC insurance coverage of deposits held in more than one insurable capacity. You may also obtain information by contacting the FDIC, Deposit Insurance Outreach, Division of Depositor and Consumer Protection, by letter (550 17th Street, N.W., Washington, D.C. 20429), by phone (877–275–3342 or 800–925–4618 (TDD)), by visiting the FDIC Website at www.fdic.gov/deposit/index.html, or by e–mail using the FDIC's On–line Customer Assistance Form available on its website. Disclosures regarding FDIC insurance coverage in this document are summary only, do not state all of the requirements and conditions of FDIC insurance, and are subject to, and qualified in their entirety by, regulations and guidance of the FDIC.

### C.  SIPC Protection

SIPC is a non–profit membership corporation created by the Securities Investor Protection Act of 1970, funded primarily by its member securities brokerage firms registered with the U.S. Securities and Exchange Commission. SIPC provides protection against custodial risk to clients of securities brokerage firms, like Robinhood, in the event such firms become insolvent. Unlike FDIC insurance, SIPC does not insure against the loss of your investment. Nor does SIPC insurance insure the quality of investments or protect against a decline or fluctuations in the value of your

**ROBINHOOD:** ROBINHOOD SECURITIES, LLC & ROBINHOOD FINANCIAL LLC INSURED NETWORK DEPOSIT SWEEP PROGRAM 

investment. SIPC protects each client's securities and cash held for the purpose of purchasing securities in a client's Account at an insolvent brokerage firm. SIPC protects against the loss of customer securities and cash awaiting investment in securities up to a total of $500,000 (of which up to $250,000 may be cash) per customer in each separate capacity under SIPC rules.

Balances maintained in the Deposit Accounts at each Program Bank are not protected by SIPC.

If you have questions about SIPC protection, please contact us at support.robinhood.com. You may also obtain information about SIPC protection, including a brochure that describes SIPC and SIPC protection, by accessing the SIPC Website at www.sipc.org.





ATU Images/The Image Bank/Getty Images Plus

**WEALTH PLANNING   >   ESTATE PLANNING**

# The Importance of a Fiduciary Accounting

*Accountings provide valuable transparency as to a fiduciary's management of key assets.*

Francine R.S. Lee | Nov 12, 2020

Acting as a fiduciary isn't always easy. A fiduciary owes many duties to the beneficiaries, and a breach of a duty can result in liability. One of these responsibilities is the duty to account.

Sometimes an accounting is required by law, requested by a beneficiary or provided by the fiduciary in the ordinary course of the administration of the trust or estate. Whatever the reason, having an accounting is one of the best ways a fiduciary can help protect itself from liability. From the beneficiary's perspective, an accounting may protect the beneficiary because it forces the fiduciary to realize that she can't account because of a failure of record-keeping; truthfully account, providing the beneficiaries with evidence of any potential wrongdoings; or falsify the accounts, which the beneficiaries can then disprove. Accountings provide better transparency to how the fiduciary managed the assets in the trust or the estate.

## What's Included?

A fiduciary accounting is a comprehensive report of the activity within a trust, estate or conservatorship during a specific time period. It shows all of the receipts and disbursements managed by the executor or trustee, properly allocating all transactions between principal and income. These accountings are regulated by their governing instruments and state law. Many states have adopted the Uniform Principal and Income Act, sometimes with modifications. An accounting differs from traditional financial statements (for example, a financial statement doesn't allocate between principal and income) and often requires more detailed descriptions of financial transactions. The way in which the information must be presented can vary depending on the nature of the entity, state format requirements and the specific requirements of the courts.

## Fiduciary Accounting Income

Properly allocating all receipts and disbursements between principal and income is required to accurately calculate fiduciary accounting income. Some of the rules are complex and not intuitive. How does a fiduciary know how much income there is to distribute to an income beneficiary if the fiduciary doesn't know the amount of the fiduciary accounting income? Knowing the amount of fiduciary accounting income is also important for determining the taxation of the trust and for tax planning for a beneficiary.

There are many differences in calculating income for tax purposes versus accounting. Generally, 26 U.S. Code Section 61 defines "gross income" as all income from whatever source derived. Fiduciary accounting income is defined by the governing instrument and state law and allocates all receipts and disbursements between principal and income. Accountings report items as income or expense when paid or received. When allocating inventory on the sales of securities, accounting uses the weighted average method, while tax reports using "first in, first out, average basis (for stock in mutual funds or dividend reinvestment) or specific identification. Accountings use the date of death for the estate valuation date; tax uses the date of death or the alternative valuation date. Flow through entities are ignored for accounting purposes. A receipt only occurs when a distribution is received. Cancellation of a debt is treated as income for tax purposes and is deemed a receipt of principal for accountings. These are just a few of the many differences.

## Overview of Principles

It's the responsibility of the trustee or executor to confirm that the information presented in the accounting is accurate. The following is a general overview of principles to keep in mind when reviewing a fiduciary accounting:

- **Reason for the accounting**. Understanding the purpose of the accounting is paramount. Knowing whether it's being prepared because of the death of a beneficiary, death or resignation of the trustee, or for a required periodic filing will determine whether distributions are required, additional schedules are needed or final reserves should be retained. Furthermore, different accounting rules apply if an accounting is prepared due to the death or the termination of an income interest.

- **Clear and thorough format.** The accounting should be easy to read and comprehend, and it must incorporate all standard schedules reflecting beginning and ending assets on hand — receipts, disbursements, gains, losses and capital changes. Although some states and jurisdictions require specific formats (for example, California, Connecticut, Florida, Massachusetts, New Hampshire and New York), the National Fiduciary Accounting Standards format is acceptable in many states.

- **Reliance on source data**. The accounting should accurately reflect all the information contained in the source data (for example, checking, savings and brokerage account statements; trust statements; and estate settlement documents). Reconstruction may be required to reconcile missing documentation.

- **Detailed documentation.** Each transaction must be documented on the appropriate schedule and should be itemized with a detailed description. Dividends and interest should be described by source and date. Each disbursement should be listed separately by date and payee, not grouped together in a broad category.

- **Asset reconciliation and income collection verification**. The accounting should identify and confirm all assets held in the trust or estate. For a first accounting, the opening balance will consist of the list of assets funding the account. For subsequent accountings, the opening balance should exactly match the ending asset values listed on the prior accounting. Assets that have been removed, transferred or disbursed should be documented. All assets that belong to the trust or estate should be disclosed, even if they're held at outside financial institutions. The income received on investments should be compared with the principal and income investment schedules to verify that all dividends, interest and other income have been properly collected and documented.

- **Capital changes.** All stock dividends, spin-offs and exchanges should be reviewed to confirm that the inventory values are properly applied, along with details of the assets spun off or exchanged.

- **Balance.** The total charges should equal the total credits. To confirm that cash and assets have been reconciled properly, they must also be reconciled separately.

In reviewing an accounting, the following common issues need to be observed:

- All statements and supporting documents have been received (for example, related accounts, loans, partnerships, Form 706 exhibits).

- Beneficiary distributions are correct per the governing instrument.

- Distributions to beneficiaries have been equalized if distributed on different dates.

- Fees have been properly allocated between principal and income as required by state law or governing instrument.

- All interest and dividends have been received and properly recorded.

- Nonstandard transactions have been identified and analyzed.

Finally, it's paramount for the fiduciary to review and agree with the accounting. Once signed, the fiduciary is responsible for the accuracy of the accounting.

*Francine Lee is a senior manager and the business leader for EY's Fiduciary/Trust & Estate Accounting Services team.*

**Source URL:** https://www.wealthmanagement.com/estate-planning/importance-fiduciary-accounting